IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | |
| ERIC ROBERTS | NO. 15-387 |

## MEMORANDUM OPINION

Petitioner Eric Roberts was sentenced to 120 months in federal prison after pleading guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and possession of controlled substances, in violation of 21 U.S.C. § 844(a). Roberts now moves under 28 U.S.C. § 2255 to vacate his felon-in-possession conviction based on the United States Supreme Court's recent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), which clarified the necessary elements of a § 922(g) offense. The Government opposes, arguing that Roberts' claims are procedurally barred. For the following reasons, Roberts' § 2255 motion shall be denied.

### I.     BACKGROUND

In June 2015, Philadelphia police officers on routine patrol saw Roberts shouting at two men and waiving an object, which appeared to the officers to be a gun. As the officers approached, Roberts fled, throwing the object as he ran. Roberts was apprehended, and the officers conducted a search incident to arrest. In addition to finding drugs on Roberts' person, the officers recovered at the scene a .38 caliber revolver loaded with five live rounds of ammunition. Roberts was subsequently charged in an indictment with one count of possession of controlled substances, 21 U.S.C. § 844(a), and one count of possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1).

Roberts pleaded not guilty on both counts and proceeded to trial. As to the felon-in-possession charge, Roberts stipulated to his status as a felon,[1] but argued that the Government could not prove that he possessed the firearm in question. On January 28, 2016, the jury returned a guilty verdict on the drug possession charge, but did not reach a unanimous verdict on the felon-in-possession charge. The parties subsequently entered a plea agreement, wherein Roberts pleaded guilty to the felon-in-possession charge. Pursuant to the agreement, Roberts would serve a sentence of 120 months' imprisonment on the drug possession charge and 120 months' imprisonment on the felon-in-possession charge, to run concurrently. On August 5, 2016, the Court held a sentencing hearing and imposed the agreed-upon sentence. Roberts did not appeal.

Now, Roberts seeks collateral relief pursuant to 28 U.S.C. § 2255. He argues that his conviction under 18 U.S.C. § 922(g)(1) must be vacated after *Rehaif*, in which the Supreme Court held that the Government, when seeking a felon-in-possession conviction, "must prove both that the defendant knew he possessed a firearm *and* that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200 (emphasis added). Roberts contends that he is actually innocent of violating § 922(g)(1) in light of *Rehaif* – a case decided over two years after his conviction became final – because Roberts did not admit in his plea, and the Government did not prove, that he knew of his felon status when he possessed the firearm. Further, because his indictment failed to allege that Roberts knew of his felon status, Roberts argues that *Rehaif* retroactively renders the indictment defective, violating his Fifth Amendment right to be free from prosecution absent a valid grand jury indictment and his Sixth Amendment right to receive notice of the charges against him.[2]

---

[1] Roberts did not, however, stipulate to whether he knew he was felon at the time of the offense.

[2] Although Roberts does not mention the Sixth Amendment, the Court construes his argument that the indictment violated his constitutional right to receive "adequate notice of the charge against him" as falling under the Sixth

The Government filed a response in opposition to Roberts' § 2255 motion on September 9, 2020, and Roberts' *pro se* reply was entered on October 5, 2020.  Roberts' motion is timely,[3]

---

Amendment's guarantee that individuals "be informed of the nature and cause of the accusation" brought against them.  *See* U.S. Const. amend. VI; *see also Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011) ("Pro se filings . . . must be liberally construed.").

[3] Section 2255 motions are subject to a one-year limitations period, which generally begins to run when the petitioner's judgment becomes final.  28 U.S.C. § 2255(f)(1).  Roberts' motion is untimely under this provision, as his judgment became final in 2016.  Nevertheless, his motion may still be timely under a separate provision, § 2255(f)(3), if the Supreme Court in *Rehaif* recognized a "new right" which was "made retroactively applicable on collateral review."  *Id.* § 2255(f)(3) (providing for a one-year limitations period running from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review").  The Government here concedes that *Rehaif* recognized a retroactive new right, and thus waives its statute of limitations defense.  *See United States v. Bendolph*, 409 F.3d 155, 164 (3d Cir. 2005) (finding that "the limitations period [under § 2255] is not jurisdictional" and can be waived).  Given, however, the growing dispute among district courts concerning whether *Rehaif* is in fact retroactive, a few words on this issue are necessary.

In *In re Sampson*, 954 F.3d 159 (3d Cir. 2020), the Third Circuit addressed for the first time whether *Rehaif* is retroactively applicable on collateral review.  It held that incarcerated individuals may not premise a second or successive § 2255 petition on *Rehaif*, as *Rehaif* does not state "a new rule of constitutional law" as required under § 2255(h).  *Id.* at 161 (emphasis omitted).  But the standard for analyzing whether *Rehaif* should be applied retroactively differs depending on whether the § 2255 motion is a successive petition, as in *Sampson*, or an initial petition, as in this case.  "Unlike new rules for purposes of second or successive § 2255 motions, 'new "rights" triggering § 2255(f)(3) need not be constitutional.'"  *Gray v. Bradley*, 2020 WL 969620, at *3 (M.D. Pa. Feb. 28, 2020) (quoting *Boatwright v. Warden Fairton FCI*, 742 F. App'x 701, 703 (3d Cir. 2018)).  The Third Circuit has yet to decide whether *Rehaif* recognizes a new non-constitutional right or rule made retroactive on collateral review.  If *Rehaif* does recognize such a right, then an initial § 2255 motion brought pursuant to *Rehaif* but filed more than one year after the petitioner's final judgment is nevertheless timely, so long as the motion was filed within one year of the *Rehaif* decision.  *See* 28 U.S.C. § 2255(f)(3).  If *Rehaif* does not recognize such a right, these motions are time-barred.

When the Supreme Court does not expressly state whether a decision creates a new right or rule made retroactive on collateral review, district courts may make this determination in the first instance.  *United States v. Swinton*, 333 F.3d 481, 487 (3d Cir. 2003).  To determine whether a Supreme Court decision should be given retroactive effect, courts apply an analysis derived from *Teague v. Lane*, 489 U.S. 288 (1989).  First, courts determine whether the case presents a "new" rule.  "[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final."  *Id.* at 301.  In *Rehaif*, the Supreme Court rejected an interpretation of § 922(g)(1) that was previously accepted by all circuit courts to have addressed the issue.  Because the rule of statutory interpretation announced in *Rehaif* was not dictated by past precedent, it qualifies as new.

A new rule applies retroactively in federal habeas cases under one of two circumstances:  The first circumstance involves certain new substantive rules, namely, those that "place[] a class of private conduct beyond the power of the State to proscribe."  *Saffle v. Parks*, 494 U.S. 484, 494 (1990).  "This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish."  *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (citation omitted).  The second circumstance involves certain new procedural rules, namely, "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceedings."  *Saffle*, 494 U.S. at 495 (quoting *Teague*, 489 U.S. at 311).  If *Rehaif* falls into either one of these categories, it should be given retroactive effect.

and ripe for adjudication.

## II.     DISCUSSION

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). Under § 2255, a prisoner in federal custody may move the sentencing court to vacate, set aside, or correct the sentence upon the ground that it "was imposed in violation of the Constitution or laws of the

---

While the distinction between substantive and procedural rules is not always clear, the Supreme Court has clarified that "[a] decision that modifies the elements of an offense is normally substantive rather than procedural," as such decisions generally "alter[] the range of conduct or the class of persons that the law punishes." *Schriro*, 542 U.S. at 353, 354. "When the Supreme Court recognizes a new substantive rule, it is recognizing that the lower courts have, in violation of the separation of powers, construed a statute too broadly so as to criminalize conduct that Congress itself never criminalized." *United States v. Dace*, 2020 WL 3603678, at *4 (D. Colo. June 24, 2020). By contrast, "rules that regulate only the *manner of determining* the defendant's culpability are procedural." *Schiro*, 542 U.S. at 353. Procedural rules "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016) (quoting *Schriro*, 542 U.S. at 352).

Recently, a court within this Circuit held that *Rehaif* presents a procedural, rather than a substantive, rule, finding that the decision merely "clarifie[s] what the Government must prove in order to convict an individual" under § 922(g), and "does not change at all those persons who can be prosecuted under § 922(g)." *United States v. Battle*, 2020 WL 4925678, at *4 (W.D. Pa. Aug. 21, 2020) (quoting *United States v. Whitmire*, 2020 WL 4333480, at *2 (S.D. Ohio July 28, 2020)). This Court disagrees. *Rehaif* has "nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced" pursuant to § 922(g). *See Welch*, 136 S. Ct. at 1265. Rather, *Rehaif* altered the class of persons that the law punishes by narrowing the scope of § 922(g), such that the statute may no longer be used to prosecute individuals who did not know of their felon status at the time they possessed the firearm. *See Rehaif*, 139 S. Ct. at 2194; *see also Dace*, 2020 WL 3603678, at *4 (finding the same).

Supreme Court precedent supports this reading of *Rehaif*. In *Bousley v. United States*, 523 U.S. 614 (1998), for instance, the Court considered whether to give retroactive effect to *Bailey v. United States*, 516 U.S. 137 (1995), which examined a statutory provision imposing increased penalties on the "use" of a firearm in relation to certain crimes. Contrary to lower court precedent, which interpreted "use" to apply to both the active employment of a firearm as well as the mere possession of a firearm, the *Bailey* Court interpreted "use" to apply only to the active employment of the firearm. *Bousley*, 523 U.S. at 617. In *Bousley*, the Court found this decision substantive, and therefore retroactive, because it held that a criminal statute "does not reach certain conduct" that lower courts had previously criminalized, namely, the mere possession of a firearm in relation to certain crimes. *See id.* at 620. Similarly, *Rehaif* held that a substantive criminal statute does not reach a certain "class of persons" on which lower courts have previously imposed punishment, *see Schriro*, 542 U.S. at 352, namely, convicted felons who possess a firearm while unaware of their felon status. These persons are now outside the scope of § 922(g). Because *Rehaif*, like *Bailey*, "narrow[s] the scope of a criminal statute," *see id.*, it presents a substantive rule that should be given retroactive effect.

Accordingly, because *Rehaif* is retroactively applicable on collateral review, and because Roberts filed his § 2255 motion within one year of the *Rehaif* decision, Roberts' motion is timely under 28 U.S.C. § 2255(f)(3).

4

United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  A motion to vacate under § 2255 "is addressed to the sound discretion of the district court."  *United States v. Williams*, 615 F.2d 585, 591 (3d Cir. 1980).

Roberts was charged under 18 U.S.C. § 922(g)(1), which prohibits the possession of a firearm by any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year."  18 U.S.C. § 922(g)(1).  Section 924(a)(2) contains the scienter requirement for this provision, providing that anyone who "knowingly violates" § 922(g) "shall be fined as provided in this title, imprisoned not more than 10 years, or both."  *Id.* § 924(a)(2).  Prior to *Rehaif*, circuit courts, including the Third Circuit, uniformly understood the word "knowingly" to apply only to the defendant's conduct, rather than to the defendant's status.  *See, e.g.*, *United States v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012).  In other words, the Government had to prove only that the defendant knowingly possessed a firearm, not that the defendant knew of his or her status as a felon at the time of the possession.

In *Rehaif*, however, the Supreme Court interpreted "knowingly" to "appl[y] both to the defendant's conduct *and* to the defendant's status."  *Rehaif*, 139 S. Ct. at 2194 (emphasis added).  Accordingly, after *Rehaif*, "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."  *Id.* at 2200.

It is undisputed that he was in fact a convicted felon at the time of his June 2015 arrest; the parties stipulated as much at Roberts' trial.  Roberts is correct, however, that his pre-*Rehaif* indictment failed to allege that Roberts knew of his felon status, and he did not admit to this fact in his plea.  He argues that these deficiencies violated his constitutional rights, and necessitate

5

the vacation of his felon-in-possession conviction after *Rehaif*. In response, the Government contends that Roberts' claims are procedurally barred, as he failed to raise these claims before the trial court and did not pursue an appeal.

"Because collateral review under § 2255 is not a substitute for direct review, a movant ordinarily may only raise claims in a 2255 motion that he raised on direct review." *Hodge v. United States*, 554 F.3d 372, 378-79 (3d Cir. 2009). Claims not raised on direct review are procedurally defaulted, and cannot be pursued on collateral review. *Id.* Roberts did not raise any of his present claims prior to this motion. His claims are therefore procedurally defaulted.

A petitioner may, however, overcome a procedural default by showing both cause for the default and actual prejudice stemming from the default. *Bousley v. United States*, 523 U.S. 614, 622 (1998). "Cause" for procedural default exists if the defaulted issue was "so novel that its legal basis [was] not reasonably available" at the time of the default. *Reed v. Ross*, 468 U.S. 1, 15 (1984). A claim is deemed not reasonably available when the Supreme Court "explicitly overrule[s] one of [its] precedents," or when the Court "overturn[s] a longstanding and widespread practice to which [the] Court ha[d] not spoken, but which a near-unanimous body of lower court authority ha[d] expressly approved." *Id.* at 17 (quoting *United States v. Johnson*, 457 U.S. 537, 551 (1982)). When a case falls into one of these categories, "there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that [the Supreme Court] has ultimately adopted." *Id.*

Here, Roberts states that he did not raise the issue of his knowledge of his felon status on direct appeal because it "was not available" at the time his judgment became final. In response, the Government notes that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley*, 523 U.S. at 623 (quoting

the vacation of his felon-in-possession conviction after *Rehaif*. In response, the Government contends that Roberts' claims are procedurally barred, as he failed to raise these claims before the trial court and did not pursue an appeal.

"Because collateral review under § 2255 is not a substitute for direct review, a movant ordinarily may only raise claims in a 2255 motion that he raised on direct review." *Hodge v. United States*, 554 F.3d 372, 378-79 (3d Cir. 2009). Claims not raised on direct review are procedurally defaulted, and cannot be pursued on collateral review. *Id.* Roberts did not raise any of his present claims prior to this motion. His claims are therefore procedurally defaulted.

A petitioner may, however, overcome a procedural default by showing both cause for the default and actual prejudice stemming from the default. *Bousley v. United States*, 523 U.S. 614, 622 (1998). "Cause" for procedural default exists if the defaulted issue was "so novel that its legal basis [was] not reasonably available" at the time of the default. *Reed v. Ross*, 468 U.S. 1, 15 (1984). A claim is deemed not reasonably available when the Supreme Court "explicitly overrule[s] one of [its] precedents," or when the Court "overturn[s] a longstanding and widespread practice to which [the] Court ha[d] not spoken, but which a near-unanimous body of lower court authority ha[d] expressly approved." *Id.* at 17 (quoting *United States v. Johnson*, 457 U.S. 537, 551 (1982)). When a case falls into one of these categories, "there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that [the Supreme Court] has ultimately adopted." *Id.*

Here, Roberts states that he did not raise the issue of his knowledge of his felon status on direct appeal because it "was not available" at the time his judgment became final. In response, the Government notes that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley*, 523 U.S. at 623 (quoting

*Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).  The Government suggests that Roberts cannot establish cause, because while the Third Circuit had previously rejected the argument that prevailed in *Rehaif*, this argument was not "so novel" as to be unavailable to Roberts at the time of his trial and plea.  This is a close question.  While "[t]he issue decided in *Rehaif* [had been] percolating in the courts for years," *United States v. Battle*, 2020 WL 4925678, at *6 (W.D. Pa. Aug. 21, 2020) (quoting *United States v. Bryant*, 2020 WL 353424, at *3 (E.D.N.Y. Jan. 21, 2020)), and therefore was "not 'so novel that its legal basis [was] not reasonably available to counsel,'" *id.* at *5 (quoting *Reed*, 469 U.S. at 16), Justice Alito noted in his *Rehaif* dissent, the *Rehaif* majority "overturn[ed] the long-established interpretation of an important criminal statute . . . , an interpretation that ha[d] been adopted by every single Court of Appeals to address the question" and was "used in thousands of cases for more than 30 years."  *Rehaif*, 139 S. Ct. at 2201 (Alito, J., dissenting).  Accordingly, *Rehaif* would appear to have "overturn[ed] a longstanding and widespread practice . . . which a near-unanimous body of lower court authority ha[d] expressly approved," suggesting that there was "no reasonable basis" for Roberts to raise the knowledge-of-status issue before the trial court or on appeal.  *See Reed*, 468 U.S. at 17.

Ultimately, however, the Court need not resolve this issue, because even if Roberts could establish cause, he cannot establish actual prejudice stemming from his procedural default.  To establish prejudice from an alleged violation of federal law, a petitioner must show "a reasonable probability that, but for [the] errors, the result of the proceedings would have been different." *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017).  The petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982).  To establish

7

prejudice in the context of a guilty plea, the petitioner "must show that there is a reasonable probability that, but for [the] errors, he would not have pleaded guilty and would have instead insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Roberts fails to make this showing.

Prior to his June 2015 arrest, Roberts already had seven felony convictions, as indicated in his Presentence Investigation Report. While most of these felony convictions resulted only in lengthy probations, Roberts did spend over three years in prison after pleading guilty in 2009 to manufacture, delivery, and/or possession of a controlled substance. *See, e.g.*, *United States v. Saunders*, 2020 WL 5569785, at *5 (E.D. Pa. Sept. 17, 2020) (finding petitioner failed to establish actual prejudice when "he had spent over two years in prison before he possessed a firearm"); *United States v. Murphy*, 2020 WL 1891791, at *2-3 (M.D. Pa. Apr. 16, 2020) (finding petitioner failed to demonstrate actual prejudice when he was sentenced to and served multiple years in prison prior to his felon-in-possession offense). This case therefore differs from *Rehaif*, where the Supreme Court found that a petitioner who "was convicted of a prior crime but sentenced only to probation" may not "know that the crime is '*punishable* by imprisonment for a term exceeding one year.'" *Rehaif*, 139 S. Ct. at 2198. Indeed, Roberts stipulated at trial that he was a felon at the time of his offense. *See United States v. Raymore*, 965 F.3d 475, 485 (6th Cir. 2020) (noting that "a jury could infer from [a defendant's] stipulation to his prior felony conviction the requisite knowledge of his status for a § 922(g)(1) violation"). Notably, Roberts does not claim or introduce evidence that he did not know he was a felon; rather, he alleges only that he did not admit to, and the Government did not prove, this fact. Given Roberts' prior felony convictions, and given the fact that he had spent well over a year in prison prior to his June 2015 arrest, it is implausible that Roberts was unaware at the time of his

8

offense that he had been convicted of a crime punishable by imprisonment of over a year, or that the Government would have been unable to prove this fact beyond a reasonable doubt. He therefore fails to establish any "actual or substantial disadvantage," *Frady*, 456 U.S. at 170, stemming from the Government's failure to charge and obtain Roberts' allocution that he knew of his felon status at the time of he possessed the firearm. He fails to establish actual prejudice.

Finally, despite a petitioner's procedural default, a court may still consider the merits of his § 2255 motion if the petitioner demonstrates that he is actually innocent of the crime for which he was convicted. A petitioner establishes actual innocence by showing that "it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 622 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 623. Here, Roberts fails to show actual innocence for the same reasons he fails to show actual prejudice: Given Roberts' past felony convictions and the over-three years he spent in prison prior to his felon-in-possession conviction, he has not shown that "it is more likely than not that no reasonable juror would have convicted him" of violating § 922(g)(1). *See id.* at 622.

In sum, Roberts' present claims cannot survive procedural default because he cannot show actual prejudice or actual innocence. Because it plainly appears on the face of the record that Roberts is not entitled to any relief, there is no need for an evidentiary hearing, 28 U.S.C. § 2255(b), and Roberts' motion shall be denied.

An appropriate order follows.

**November 13th, 2020**               **BY THE COURT:**

                                       */s/ Wendy Beetlestone*
                                       _____
                                       **WENDY BEETLESTONE, J.**